Matthew Wessler, D.C. Court of Appeal, Jr. Good morning. Thank you, Your Honor. May it please the Court, Matthew Wessler for the appellant. With the Court's permission, I'd like to reserve three minutes for rebuttal. Shortly after certifying a class claim in this case and authorizing the named plaintiff to litigate it on behalf of absent class members, the district court granted summary judgment to the defendant Milliman and dismissed the claim for failing to meet a requirement that it called class-wide standing. This was error for two independent reasons. First, there is no such thing as class-wide standing. In an unbroken line of at least nine separate cases, including at least one decision and bonk, this court has repeatedly held that in a class action, standing is satisfied both pre- and post-certification. So long as the named plaintiff meets Article III's requirements, that clear and settled understanding accords with every other circuit to have considered the question, even after the Supreme Court's decision in TransUnion. And it also accords with Article III itself, which through its cases and controversies requirement insists only on the existence of a real controversy that will have real impact on real people. And whereas here, there is no dispute that the named representative has standing to prosecute the class claim on behalf of absent class members, that requirement is satisfied. Second, even if the district court were correct that a certified class must establish something called class-wide standing, the record evidence here was more than sufficient to do so. That's because it showed, based on Milliman's own policies and practice, as well as the company's employee's testimony, that a report containing a mismatched social security number associated with a specific health record is considered inaccurate. After looking at this evidence, the district court said that although it was indicative of an inaccuracy, that wasn't enough at the summary judgment stage because, to quote the district court, what's required is direct evidence of injury. In the district court's view, in other words, circumstantial evidence doesn't cut it. But no authority supports that view, which, if adopted, would create a novel special heightened rule, 56 evidentiary standard, that applies just to Article III questions and nothing else. Yeah, I mean, I don't know it's as helpful to focus on just specific phrases that the district court used. I mean, I think moving to the second part of your argument as to assuming you had to show this, was there a genuine dispute of material facts? I mean, what evidence is there to show that on a class-wide basis you could look at the social security numbers and from that infer that there was a mismatched medical record? Sure, and I'm going to answer that question. I do want to just bracket that there's, in our view, a large step to take to assume away the first question and go into the record evidence because we don't think it matters. But yes, I do want to walk through, I think it's helpful to walk through exactly what the record evidence is here. And it's based almost entirely on Milliman's own practice, policy, and records that are contained that it disclosed during discovery in this case. For starters, Milliman has conceded, this is at page 53 of its brief to this court, among other places, that a mismatched social security number is, quote, a sign or, quote, a symptom of an inaccuracy. So that is Milliman's own position about how these mismatched social securities work when it comes to an inaccuracy in one of these reports. There's also record evidence, and this is at the ER, the third volume, page 300 as an example, in which Milliman's own employees agree that a mismatched social security number is, quote, very strong indicator. I'm sorry. Let me rephrase that. At 300 of the ER excerpts, Milliman's employees agree that social security numbers are, quote, very strong indicators of accuracy. And the reason they're very strong indicators of accuracy is because they're the only unique identifier of a consumer. So the — How about the inverse, though, right? Right. So the inverse of that is in the way that Milliman treats the existence of a mismatched social security number. This is at ER 266 to 269. Examples over and over again of Milliman's own practice being to look at social security numbers as conclusive evidence of an inaccuracy. So, for instance, you have employees who are saying someone has complained about an inaccurate health record, and someone within the company says, yes, these are inaccurate because we've looked at the social security numbers and they don't match the consumer. That's at 266 to 269. It's also at ER 346, in which Milliman employees concluded, for instance, that certain prescriptions that were associated with the consumer were erroneous. That's the term that the company used, because they were based on a wrong social security number. Aren't these situations where, you know, they're then looking into the records and trying to figure out, OK, well, is this — are there mismatched medical records? I mean, the concern I would have just hearing this is that if all I know is that someone has a social security number that doesn't line up, how would we know, even as to one person, what's actually in the medical records until you look at it? It's — again, in Milliman's own words, they have called it the key differentiator. It is the piece of data that tells you whether the medical record is the consumer's or not. And I think that, Your Honor, in addition to just sort of the defendant's own records here, which, again, we are at the summary judgment stage, the question, assuming you get to this second question, is just is that — does that evidence permit a jury to draw the inference that it is — that there is an inaccuracy? It is possible, Your Honor, like, you know, if you were on the jury, you might conclude no, that is insufficient, and we conclude there is no inaccuracy. But we are at the summary judgment stage, and I think even the district judge here recognized that the mismatch in the social security number is an indication of an inaccuracy. And at this stage in the proceeding, that should have been sufficient to allow the question to reach a jury. I think it also accords just with common sense. If you were to ask, you know, just a person whether — if they had information on their report and the information that said that they had a specific health record, and you looked and you saw that it was associated with somebody else's social security number, you would think that's not my information. That is how Milliman does it. It has called it the key differentiator. It is how it determines inaccuracies itself. And I guess the issue, again, is that, you know, once the class is certified, we're talking about, like, 300,000 people in Dr. Jaffe's, you know, ring fence number. And so we're going to make the — we're going to have a jury conclude that it's more likely than not that 300,000 people have mismatched medical records based on the social security information, when it seems from the data just that this isn't like a — you know, it happens from time to time. It happened to Mr. Healy. But it's a fraction of the total universe of records that exist. So, I mean, I hear you on the circumstantial fully. You can do that. But the issue is, is there just too much speculation associated with the proof? Yeah, I mean, with respect, I don't think that's a fair reading of the record. Milliman has identified out of those 300,000, potentially six consumers who had mismatched those security numbers but may have had accurate health records. So I don't think it's a fair description of the record to suggest that there's a small fraction in which there would be people who had the wrong health records associated with the wrong social security numbers. What evidence is there that people who had wrong social security numbers also had wrong mismatch? I mean, wrong records.  That's in the record. There are dozens and dozens and dozens of individuals that the plaintiffs submitted in the record at the summary judging stage. That's right. But we're talking about 300,000 people. We are. But again, this is — I would submit, Your Honor, that this is a question of proof, you know, in front of a jury. If Milliman is going to be able to get up and make all the arguments Your Honor is making now to argue that this is insufficient to establish an inaccuracy, and if a jury were to conclude that that is the case, then Milliman would win. Now, I also just want to perhaps take a step back, because these claims under the Fair Credit Reporting Act don't — there is no strict liability for inaccuracy. That is only one step in the process. This is a reasonable procedures claim. And so what, in fact, the plaintiffs would need to do is not just establish the existence of an inaccuracy, but also demonstrate that Milliman failed to assure maximum possible accuracy through its procedures. We are not there yet, but that is a necessary step in the process to obtaining a class-wide judgment. Now, I would like to step back, because although we spent the last six minutes or so talking about the record evidence, it was fundamentally improper for the district court in this case to even ask that question at this stage. Where I started was to say — and I'd just like to spend a few minutes on this, if I may — an unbroken line of binding authority from this Court that the only relevant standing that matters at the Rule 56 summary judgment stage after a class has been certified is the standing of the named plaintiff. There is no dispute in this case that the named plaintiff has standing, Article III standing, to prosecute the class claim on behalf of all of the absent class members. That is all that is necessary to allow this case to proceed, and that's all that would be necessary for this Court to reverse. The unbroken line of cases dates back more than two decades to an en banc decision from this Court called Bates, in which the Court — and I'm just going to quote the language — said, quote, in a class action, standing is satisfied if at least one named plaintiff meets the requirements. That is what we have here, and that is controlling authority from this Court. I'm not sure we've ever specifically addressed this summary judgment piece of it. I mean, that's the question in this case. I don't know that there's binding authority on that. There's authority one can draw inferences from and reason off of, but I'm not sure there's a case that — Oh, I don't — I disagree with that, Your Honor. I think there is — there is binding authority post-Bates that includes — now, what Milliman has said is there's no case that has come up in the context of a Rule 23b3 damages class action, and no case that has come up after the class has been certified. And I think both of those are quite wrong. This Court's decision in Briseno, 844 F. 3rd at 1121, this Court's decision in Freekin, 979 F. 3rd, 644, and this Court's decision in Gutierrez are but some of the examples of cases that were B3 damages classes, just like this one, in which district courts certified the class, just like this one, and in which a defendant challenged standing after the class was certified. After class certification. Freekin, Your Honor — How about transunion, though? I mean, that's — you haven't discussed that yet, but that's all over the briefs. Sure. Sure. There is — yes. So the only authority that Milliman relies on — it hasn't identified a single case from this Court in which the rule has been anything other than what I've said. All it says is that transunion has somehow silently overruled this Court's line of cases and set out a different rule that absent class members are required to establish their personal standing at some point up through until trial. There is nothing in the Supreme Court's decision in transunion that supports that novel rule. In fact, what the Supreme Court said in transunion is fully consistent with what this Court has said, which is the relevant point at which absent class member standing matters is after judgment when individual class members come in and seek their own individual relief. That comes from the decision itself, and it is also consistent with how this Court understood the issue in Ramirez v. Transunion before it reached the Supreme Court. That's exactly what this — what this Court said, and that part of the decision from the Supreme Court in transunions was — was affirmed. The Court said exactly the same thing that this Court did. I think that also is just a Court's also — Judge Breyer, just to put a kind of final point on it, with the only circuit to have addressed this precise issue since transunion, which is the Third Circuit in a case called Huber, the defendant made exactly the same argument that Milliman is making here, which is transunion somehow changed the game that this Court is playing. The Third Circuit rejected that argument and said it fundamentally misapprehended transunion, which did not address this precise question, but what it said was fully consistent with the rule that every circuit has adopted, which is that absent class member standing does not matter until after judgment when they come in to seek their own individualized relief. Unless the Court has further questions, I'd reserve the rest of my time for rebuttal. Okay. Thank you. May it please the Court. My name is Nathaniel Garrett, and I represent Milliman. So just to take a step back, we agree there are two distinct issues in this case. The first is, I think, a relatively important and unsettled issue about what a certified class must prove in summary judgment. Counsel just told you there's an unbroken line of cases holding that a certified class at summary judgment doesn't need to prove standing. That's wrong. And I want to get to the second question first, but I do want to say this. It's funny, actually. I watched the Ramirez versus transunion argument the other day from the Ninth Circuit, and a very similar argument was made on the very same cases. Counsel for the plaintiff said, under Bates and this line of authority, class members don't need to prove standing at trial. You can rely on the class rep. And both Olien and Ramirez, Olien, the on-bank case, rejected that argument. They said Bates is an injunctive relief class. That doesn't tell you what a damages class must prove. And in any event, and more importantly, that's about class certification, which isn't a merits determination. It's a determination about how the case should proceed. So there are, we submit, and I can address it, several cases that have anticipated this scenario of what would happen at summary judgment. And, in fact, they suggest that we're right, that this is a determination for summary judgment. But I want to jump to the second question quickly because that's where a lot of the time was spent about the evidence. I think counsel made a rather remarkable concession this morning when he said this case is based almost entirely on Milliman testimony. That is not how this case was tried. This case was certified based on a representation by plaintiff's counsel. They had submitted this report for Mr. Jaffe. And we said, well, that report doesn't tell you if the class members have standing. And they said to Judge Kuhnhauer, don't worry, don't worry. What we're going to do is we're going to look at Milliman records, and we're going to be able to determine who had the wrong medical record sent and who didn't. Two years passed. Discovery closed. And I think it's fair to say Judge Kuhnhauer was rather irked when he learned that they hadn't done that work. They hadn't looked at our records. They hadn't determined out of the 311,000 class members who had the wrong medical data and who didn't. Instead, what they said, and this is at SCR 16, when he asked them, how are you going to prove your case, here's what they said. They said, we're going to submit Mr. Healy's story, and we're going to have Mr. Jaffe testify that 311,000 people had mismatched Social Security number data, and we're going to ask the jury to infer that every single member of this class had the wrong medical data shared. Now they say, I think recognizing the speculative leap that is required there, now they say, well, actually, this case is mostly about Milliman records. So let me explain what those are. Out of the 311,000 people that they say had the wrong information sent, 47 not only had the wrong information sent, they said had information sent that would have resulted in a denial of insurance, 47 contacted Milliman and said, I think there's a problem with my file. And they rely on one of those disputes and one piece of testimony from a Milliman representative. Here's what the Milliman representative said. The first thing we do is we try to get a Social Security number match because that's a strong indicator you got a match. If we got that, that's good. But if we don't have a Social Security number, we can also do a lot of other things, including first name, last name, zip, gender, date of birth, et cetera. They want to take the inverse of the statement that Social Security number is a strong indicator to say when you have a conflict, that's a strong indicator the record is wrong. This is a form... I guess my question is why doesn't that just raise a material issue of fact, the wrong Social Security matching of wrong... I think because this is a class of 311,000 people. And so what we know is they need to create a triable issue of fact to say whether you take Class Member 1, Class Member 1,000, Class Member 2,000, the jury needs to say based on this evidence, regardless of how you match this person, regardless of the information that was sent to an insurer, I can conclude you sent the wrong data. And the — and this evidence isn't strong enough to let a reasonable juror conclude that, and I think that's what the district judge of 44 years was concerned about. Because this inverse, there's a name for this. It's such a common form of a logic. It's got its own name. It's called the fallacy of the inverse, right? If you're a mechanic, you have a job. If you're not a mechanic, you don't have a job. You can't take a statement and just say the inverse is also true. And that's particularly the case here when their own expert told us he cannot tell out of these 311,000 individuals who had the wrong medical data set. He said it may be the wrong data. It may not be. It's at SCR 65. He said, I didn't look at anybody other than Mr. Healy. I didn't determine whether anybody has the wrong information. And importantly — Well, Counselor, you raised the issue that only 47 people contacted you about the mismatch. But that doesn't mean that there aren't a significant number of those 307,000 people that just said, OK, I guess I got denied. That's it. I concede, Your Honor, for purposes of this appeal, that could be the case. That could be. I think the problem is how does the jury figure out out of these 311,000 people that every single one of them were in that bucket? You can't do that. That's the problem. I mean, this starts to raise questions whether some of this is more properly addressed, frankly, at class certification. But we're not obviously there in this appeal. But can you address the points Mr. Wessler was making about just the legal premise that we're operating under here, which is that standing is relevant at this point?  So we submit, and I think it's right, neither party has cited a case that involved this exact question. But transunion, we think, leads to the answer. And I think there's some independent principles that lead to the right answer. Here's why transunion, I think, leads to this answer. There's three lessons of transunion. Number one, there does come a point in time when the certified class can't rely on the standing of the named class member. So, as I said, in Ramirez, they argued even if you go to trial, you only need to prove the standing of the named class representative. Supreme Court said no, that's wrong. Number two, they reaffirmed the principle that standing, like other elements of the plaintiff's case, has to be proved with the manner and degree of evidence required at each stage of the litigation, which led them to their third holding, that if you go to trial, you need to induce evidence at trial that you have standing and convince the jury of that. We think the natural implication of that is at summary judgment, you don't have to prove your case, but you do need to create a triable issue of fact on the certified class that they have standing. Now, even putting aside transunion, I think there's several reasons for this. One is I think the case law suggests this. Plaintiffs are relying on class certification cases, but there's a couple cases that I think are more relevant here. One is Tyson Foods, the Supreme Court decision in Tyson Foods, where the defendants challenged at class certification whether plaintiffs had proven an element of their claims. And what Tyson Foods said is if there's a failure of proof as to an element in a class, quote, courts should engage that question as a matter of summary judgment, not class certification. In this case, in this Court's opinion in Zappos at footnote 12, that was another case that did reaffirm the principle that only the named class member has to prove standing in class certification. But they said you're not going to be done. You're going to have to do more later. And they said, quote, in opposing a motion for summary judgment, for example, plaintiffs would need to come forward with evidence to support standing. So I think to the extent this issue has been foreseen or forecasted, the notion was, yeah, summary judgment, there's not an exception for standing, which is what this would be. I mean, I don't think defendants are arguing. I don't think plaintiffs are arguing.  Aren't you kind of arguing the opposite in one sense? And that is under normal summary judgment standards, you draw inferences in favor of the plaintiff. You can consider circumstantial evidence. So assuming hypothetically you're right, that they need to come forward as summary judgment, here the district judge said you need direct evidence, and he put direct in italics, emphasizing, and didn't seem to apply the normal, usual summary judgment standard. So at summary judgment, what is your view of what evidence and what standards should apply in the question of standing? I agree with you, Your Honor, that I think circumstantial evidence can be enough. I think inferences have to be drawn in favor of the plaintiff, and the question is whether that creates a triable issue of fact. Now, I think — And to go — just to go back a little bit to make sure I understand the scope of your argument, your argument would be that at each stage of the litigation, we're talking about a 12B6 motion for dismissal, at class certification, at summary judgment, that standing has to be established. Absolutely not.  Absolutely not. Because the difference is the reason certification matters, Your Honor, that's the sort of point in time when it changes, is for several — for three reasons, really. But I'll start with, I think, the most powerful one, which is that's the point in time when the plaintiffs are added to the case as parties and their claims are added to the case. That's when the court gains jurisdiction over the class members to render dispositive judgment against them. And we know from cases like Valley Forge that the exercise of judicial power is limited to litigants withstanding. So when they come in with a complaint, no, they're not part of the case. The individual. Exactly. The named plaintiff has to be established.  And at class certification, obviously, this is an area of much — I mean, this is an area of much development recently, but at least now we can see it in the Ninth Circuit only the named plaintiff's standing is required. They're not part of the case yet. Once it's certified and they are part of the case, then the obligation — they do have to prove standing with the manner and degree of evidence required at that stage of litigation, whether it's summary judgment or trial. I think the other reason that has to be right, Your Honor, is the Rules Enabling Act, right? We know Rule 23 is a procedural device that doesn't enlarge or abridge the party's substantive rights. And we know from Dukes that that means we're entitled to prove our individual defenses to all the plaintiff's claims, even in a class action. What I think defendants are saying is we can challenge everything else about the plaintiff's case at summary judgment. In other words, if this was a fraud case — just imagine, a certified class on a fraud case. We could make a summary judgment motion about there was no misrepresentation, so the class fails. There's just an exception for standing. That's something you just punt later as an — you know, it's a nicety to be dealt with at the end of the case. I think that has to violate the Rules Enabling Act. We have a right at summary judgment to challenge their case on the merits, and there shouldn't be an exception for standing. And I think the third reason is it's not just a procedural device, it's an aggregation tool. It's the modern form of JOINDER, Rule 23. And we know the Supreme Court has now told us that in other aggregation cases, like intervention, when you add plaintiffs and claims to the case, they need to prove standing when they come into the case. Right? That's Town of LaRoe. If they seek their own damages, when they come into the case, they have to prove their own standing. And we submit that's what happens at certification, when they're added to the  What happens — I mean, on your view, what happens if we're at this point and it But maybe not — there's not a genuine dispute of fact as to others of them. What is the district court supposed to do?  I've thought a lot about that. I think in the ideal case, this all flows naturally, in the sense that at class certification, they come up with a plan to have common evidence so that there's predominance. Right? Olin says, at the class certification stage, come up with a plan where you're going to be able to show standing in a common way. You don't have to prove it. It's not a merits determination, but you've got to come up with a plan. And so let's say they do that. Then they get to summary judgment and we say, okay, now show us the evidence and create a triable issue of fact. And then you get to trial and you prove the evidence. This case is a little bit odd because, as I said before, they promised common evidence at class certification that then they abandon later on. I think in that circumstance where you have evidence that certain class members don't have standing, the question is, is there a way for separating them? Right? If there was a way for separating those individuals out in a way where common questions would still predominate, maybe the court could try to fashion a situation there. The problem is here, they are still relying on common evidence, the Jaffe report. They still want all 311,000 individuals to go forward on the same body of evidence, and so they haven't given us a way to cut the wheat from the chaff. That's the problem. In another case where the plaintiffs were up front about saying there's a certain number of people that don't have standing, I think what Olien suggests is the court needs to figure out whether that means there's a predominance problem or whether there's at least a way down the road for winnowing those people out. Does that make sense? Thank you. I'm happy to give the Court back time unless there are any further questions. Thank you, Your Honors.  Thank you. Thank you, Your Honor. Just a few brief points in rebuttal. I didn't hear any meaningful effort to distinguish the line of cases that this Court has adopted over the last 20 years establishing that the only party standing that matters in a class action, either pre-certification or post-class certification, is the named plaintiff. Judge Bress, you asked for several cases that dealt with this issue. I think the best case is probably this Court's decision in Gutierrez. That case went past where this case was. That case went all the way through to a trial and a judgment, a class-wide judgment against the defendant. And after judgment, the defendant in that case appealed and argued that the class lacked standing and the case was non-justiciable under Article III. And this Court said in that case the only standing that matters, even through trial, is the named plaintiffs. And there's a reason why that makes sense. Because although you heard my friend on the other side talk about the point of class certification as somehow aggregating all of the class's claims, that is not what is happening here. Rule 23 authorizes one plaintiff, the named plaintiff, to prosecute a single class claim. That's the term it uses in the rule, a class claim. And so it is the named plaintiff standing that matters to prosecute that class claim. This is not a situation, Rule 23 and class actions, are not at all like intervention because no absent class member comes forward and asks to enter the case to litigate their own claim. It is a classic form of representative action, and that's why the inquiry has, in this Court and everywhere else, always trained on the named plaintiff. Unless the Court has any further questions.  Thank you. We thank both counsel for the briefing and argument. The case is submitted.
judges: THOMAS, BRESS, MENDOZA